**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation, | |
| Plaintiff, | Case No. |
| v. | |
| BENCHMARK INSURANCE COMPANY, a Kansas corporation, | |
| Defendant. | |

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Plaintiff, Travelers Property Casualty Company of America ("Travelers"), a Connecticut corporation, by SmithAmundsen LLC, pursuant to 28 U.S.C. §§ 2201 and 2202, for its Complaint for Declaratory Judgment and Other Relief against Defendant, Benchmark Insurance Company ("Benchmark"), states as follows:

## I. JURISDICTION

1.    The jurisdiction of the Court is premised upon 28 U.S.C. §1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## II. VENUE

2.    Venue is premised upon 28 U.S.C. §1391 in that Benchmark is a resident of this District as defined by 28 U.S.C. § 1391(c) and a substantial part of the events or omissions giving rise to this suit occurred in this District.

## III. THE PARTIES

3.    Travelers is an Connecticut corporation, with its principal place of

1

business in Hartford, Connecticut. At all times relevant hereto Travelers was authorized to issue policies of insurance in the State of Illinois and issued a certain policy to its named insured, Arthur J. Rogers & Co. ("AJR"), as detailed herein.

4.      Benchmark is a Kansas corporation with its principal place of business located in Topeka, Kansas. At all times relevant hereto Benchmark was authorized to issue policies of insurance in the State of Illinois and issued a certain policy to its named insured, Helget Gas Products, Inc. ("Helget"), as detailed herein.

## IV.  THE *HARO* SUIT

5.      On February 21, 2020, an individual named Brian Haro ("Haro") filed suit against AJR and Rogers Industrial Park ("Rogers Industrial") in the Circuit Court of Cook County, Illinois, Case No. 20 L 002190 (the "*Haro* suit").

6.      Haro's original complaint named only Rogers Industrial as a defendant.

7.      On September 18, 2020, Haro filed a Second Amended Complaint (Haro Complaint"), adding AJR as a defendant, a copy of which is **Exhibit A** hereto.

8.      Count I of the *Haro* Complaint alleges that, on January 28, 2019, Rogers Industrial owned, operated, controlled, maintained and managed a building and surrounding property located at 2711 Coyle Ave Elk Grove Village, Cook County Illinois, referred to as the "Building." **Ex. A**, ¶ 2.

9.      The *Haro* Complaint alleges, on and for some time before January 28, 2019, there existed a dangerous and defective condition in the drainage system on the West side of the Building that caused an unnatural accumulation of ice and snow on the West side of the Building. *Id*., ¶¶ 3, 4.

10.     The *Haro* Complaint alleges that the condition of the Building's drainage

system on the West side was a dangerous and defective condition. *Id.*, ¶ 5.

11.     The *Haro* Complaint alleges that, on January 28, 2019, the condition of the entry and exit way, sidewalk, parking lot and loading dock on the West side of the Building was in a dangerous and defective condition. *Id.,* ¶ 6.

12.     The *Haro* Complaint alleges that, as of the aforesaid date, Rogers Industrial knew or reasonably should have known of the existence of the dangerous and defective condition of the drainage system and of an allegedly dangerous and defective condition of the entry and exit way, sidewalk, parking lot and loading dock on the West side of the Building. *Id.,* ¶¶ 7, 8.

13.     The *Haro* Complaint alleges that, on January 28, 2019, Haro was attempting to exit the Building, on the West side, and slipped on ice, fell and sustained injury. *Id.,* ¶¶ 10, 11.

14.     The *Haro* Complaint alleges that, on and before January 28, 2019, Rogers Industrial had a duty to maintain the Building, entry and exit ways, surrounding sidewalks, parking lots and loading docks in a reasonably safe condition. *Id.,* 12

15.     The *Haro* Complaint alleges that, on or before January 28, 2019, Rogers Industrial was negligent in one or more of several enumerated ways. *Id.,* ¶ 13.

16.     The *Haro* Complaint alleges that Rogers Industrial owed a duty of care to Haro and that, as a direct and proximate result of one or more acts or omissions of Rogers Industrial, Haro sustained severe and permanent injuries and other damages. *Id.,* ¶ 15.

17.     In the prayer for relief of Count I, Haro demands judgment against Rogers Industrial in an unspecified amount in excess of $50,000.

18.     Count II of the Haro Complaint alleges a cause of action of negligence

against AJR.

19.     In Count II, Haro alleges that AJR maintained, operated, managed and supervised Rogers Industrial Park, including the Building, surrounding property and a parking lot." Id., Ct. II, ¶ 3. Otherwise, Count II pleads factual allegations against AJR substantially similar to those pleaded against Rogers Industrial in Count I. *Id.,* ¶¶ 1, 3-16.

20.     Count II prays for judgment against AJR for a sum in an unspecified amount in excess of $50,000.

## V.  THE LEASE FOR THE PROPERTY

21.     At the time of the incident alleged in the *Haro* Complaint, Haro was in the course of his employment as an employee of Helget Gas Products, Inc. ("Helget").

22.     At all times relevant hereto, Helget, as "Tenant," was party to a Lease Agreement ("Lease"), the other party being "[AJR] as agent for Rogers Industrial," as Landlord. A true and correct copy of the Lease, including "Lease Extensions," is attached hereto as **Exhibit B.**

23.     At all times relevant hereto, the real property that is the subject of the Lease was owned by Rogers Industrial.

24.     At all times relevant hereto, AJR served as the property manager of the property that is the subject of the Lease.

25.     The Lease pertained to "Building #3" in the Development identified as "Rogers Industrial Park" at the "Premises" located at 2709-2711 Coyle, Elk Grove Village, Illinois. **Ex. B**, p. 2.

26.     The  "Term" of the Lease was August 15, 2001 to September 14, 2008. *Id.,* p. 3. The Term was extended from time-to-time pursuant to Lease Extensions, and

was in full force and effect at all times relevant hereto. *Id*., pp. 21-30.

27.    At all times relevant hereto the Lease included Article 6, "Insurance and

Indemnifications." *Id.,* p. 10.

28.    At all times relevant hereto Article 6.1 of the Lease, "Public Liability and

Property Damage," provided as follows:

Tenant shall procure from companies satisfactory to Landlord and maintain during the
term of this Lease, at its own cost and expense, a policy or policies of insurance insuring
Landlord and Tenant, as their respective interests may appear, against Public Liability
and Property Damage occurring on Leased Premises or by reason of the use and
operation thereof, which policy or policies of insurance shall:

   a)   insurance coverage against any and all liability whatsoever and howsoever
        occasioned by reason of injury to persons in the amount of $1,000,000 per
        accident or occurrence….*Id.*

## VI.  **THE BENCHMARK POLICY**

29.    Benchmark issued a liability insurance policy to Helget, with an effective

period of July 1, 2018 to July 1, 2019 ("Benchmark policy"). On information and belief,

a true and correct copy of the Benchmark policy is attached hereto as **Exhibit C.**

30.    The top of the first page of the CGL Coverage Form of the Benchmark

policy states as follows:

Throughout this policy the words "you" and "your" refer to the Named
Insured shown in the Declarations, and any other person or organization
qualifying as a Named Insured under this policy.  The words "we," "us"
and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such
under Section **II** – Who Is An Insured. **Ex. C**, p. BMK 007.

                                    *   *   *

31.    The Insuring Agreement of Coverage A of the Benchmark policy provides

as follows:

We will pay those sums that the insured becomes legally obligated to pay

as damages because of "bodily injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. *Id.*

32.     Condition 4 of the Benchmark policy, "Other Insurance," provides as follows:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> \* \* \*
>
> This insurance is primary except when Paragraph b below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary period then, we will share with all that other insurance by the method described …below. *Id*., p. BMK 018.
>
> \* \* \*

33.     The Benchmark policy is endorsed with a "Primary and Noncontributory - Other Insurance Condition" endorsement which provides as follows:

> The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:
>
> **Primary and Noncontributory Insurance**
>
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> (1)     The additional insured is a Named Insured under such other insurance; and
>
> (2)     You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured. *Id*., p. BMK 074.

34.     The Benchmark policy is endorsed with an "Additional Insured – Managers or Lessors of Premises" endorsement ("AI-Managers Endorsement") the Schedule of which, in the "Designation of Premises" field, states "2709 Coyle - Elk Grove Village, IL 60007" and in the "Name Of…..Organization…(Additional Insured)"

field states "Arthur J. Rogers & Co." *Id.*, p. BMK 089.

35.     The AI-Managers Endorsement provides as follows:

**Section II – Who is an Insured** is Amended to include as an additional insured… the. Organization(s) showing in the schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you [Helget] and shown in the Schedule." *Id.*

## VII.    THE TRAVELERS POLICY

36.     Travelers issued Policy No. Y-630-2L456331-TIL-18, effective from September 30, 2018 to September 30, 2019 ("Travelers policy") to AJR. The Travelers policy included a Commercial General Liability coverage part ("Travelers CGL"), a true and correct copy of which, with applicable declarations and endorsements, is attached hereto as **Exhibit D.**

37.     The Travelers CGL contains a Commercial General Liability Coverage Form that contains first page definitions and a Coverage A insuring Agreement, the terms of which are identical to those of the Benchmark policy. **Ex. D**, p. TVL 19.

38.     Section IV of the Commercial General Liability Coverage Form of the Travelers CGL, "Conditions," includes the following:

**4.     Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

\*   \*   \*

**b.  Excess Insurance**

This insurance is excess over:

\*   \*   \*

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been

added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any of other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; *Id*., p. TVL 29.

\* \* \*

**8.    Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. *Id*., p. TVL 30 .

\* \* \*

39.    The Travelers CGL is endorsed with a "Real Estate Property Managed" endorsement which provides in relevant part as follows:

With respect to your liability arising out of your management of property for which you are acting as a real estate manager this insurance is excess over any other valid and collectible insurance available to you. *Id*., p. TVL 58.

## VIII.  BENCHMARK'S DENIAL OF COVERAGE FOR AJR

40.    The original complaint filed by Haro named only Rogers Industrial as a defendant.

41.    On July 9, 2020, the Travelers claim handler assigned to the *Haro* suit sent a letter to Helget and Gallagher Insurance, tendering the defense of Rogers Industrial to Benchmark pursuant to Article 6.1 of the Lease, and advising that the tender was

"targeted." A copy of the tender letter is attached as **Exhibit E** hereto.

42.     On August 25, 2020, an attorney identifying herself as "Claims Counsel to VGM Insurance Services ["VGM"], who has a [CGL] policy in effect for Helget" ("Claims Counsel") responded to the tender letter, denying the tender on the basis that the indemnification terms of the Lease did not require Helget to indemnify Rogers Industrial for the claim made in the *Haro* suit. A copy of Claims Counsel's email and those that followed are attached hereto as **Exhibit F**. The aforesaid email is found on p. 3.

43.     On information and belief, at all times relevant hereto, Claims Counsel was duly authorized to speak and act on behalf of Benchmark.

44.     On August 28, 2020, Travelers' claims handler responded, informing Claims Counsel the "tender is primarily focused on the additional insured requirement [of] the Lease" and requesting a copy of the Benchmark policy. **Ex. F**, pp. 2-3.

45.     On September 17, 2020, Claims Counsel provided a copy of the Benchmark policy issued to Helget and requested a copy of the policy that Travelers issued to Rogers Industrial. *Id*., p. 2.

46.     On September 29, 2020, Travelers claim handler wrote to Claims Counsel, provided a copy of the Travelers policy, inquired regarding the tender and noting that the Benchmark policy "contained…and [sic] additional insured endorsement, which listed [AJR] and the location of the accident." *Id*., pp. 1-2.

47.     On October 2, 2020, Claims Counsel responded, acknowledging receipt of the Travelers policy, expressing awareness of the additional insured endorsement of the Benchmark policy, but asserting that "Exclusion e" of the Benchmark policy, which bars coverage to an insured for liability for injury to its employee, applied to bar coverage for

AJR. *Id.*, p. 1.

48.     On January 12, 2021, Travelers' claim handler responded by email to Claims Counsel, advising that "Exclusion e" was inapplicable to coverage for AJR and providing a supporting decision from the Illinois Appellate Court. A copy of the email and decision are attached as **Exhibit G** hereto.

49.     On February 24, 2021, Claims Counsel responded to Travelers by email, abandoning "Exclusion e" and instead challenging the effectiveness of the "target tender." A copy of the email is attached as **Exhibit H** hereto.

50.     In the email of February 24, 2021, Claims Counsel acknowledged that AJR qualifies as an additional insured on the Benchmark policy and was entitled to defense and indemnity under the policy, but asserted, based on their respective "other insurance" conditions, that the Travelers CGL provided AJR with primary coverage and owed AJR a duty to defend, while the Benchmark policy owed AJR only excess coverage, with no duty to defend, stating:

> Our Benchmark Policy has the Additional Insured - Managers or Lessors of Premises endorsement which…is quite broad.  It extends "Who is an Insured" to include [AJR] for the address cited and leased by our insured, Helget….

> While we agree that [AJR] is covered by the Benchmark Policy due to the AI endorsement there are other considerations.

> [Discussion re "target tender" omitted.]

> While Benchmark does owe a duty to defend and indemnify [AJR]….Benchmark is excess to Travelers and does not have to defend and indemnify until Travelers exhausts its limits. **Ex. H**.

51.     Because Benchmark has failed and refused to defend AJR, Travelers, pursuant to the Travelers CGL, has done so and continues to do so as of the date of the filing hereof by paying for attorneys' fees and legal expenses in connection with the

defense of AJR in the *Haro* suit.

## COUNT I - DECLARATORY JUDGMENT

52.     Travelers repeats and realleges ¶¶ 1 through 51 hereof, inclusive, as and for ¶ 52 of this Count I.

53.     At all times relevant hereto, Article 6.1 of the Lease required that Helget:

> [P]rocure…and maintain…at its own cost…a policy…of insurance insuring [AJR and Helget]…against Public Liability …. occurring on Leased Premises or by reason of the use and operation thereof, which policy…shall [provide]…insurance coverage against any and all liability whatsoever and howsoever occasioned by reason of injury to persons in the amount of $1,000,000 per accident or occurrence… **Ex. B,** p. 10, underscore supplied.

54.     As a matter of law, the foregoing Lease terms required Helget to provide AJR with primary and noncontributory liability insurance "against any and all liability whatsoever and howsoever occasioned by reason of injury to persons."

55.     Based on its "Primary and Noncontributory - Other Insurance Condition" endorsement and the foregoing Lease terms, the Benchmark policy provides primary and noncontributory insurance to AJR and the Travelers CGL provides excess insurance to AJR and owes no duty to defend or indemnify AJR unless and until the Benchmark policy has been exhausted.

56.     In the alternative, based on the "Other Insurance" conditions in their respective CGL Coverage Forms, the Benchmark policy provides primary and noncontributory insurance to AJR and the Travelers CGL provides excess insurance to AJR, and owes no duty to defend or indemnify AJR unless and until the Benchmark policy has been exhausted.

57.     In the further alternative, based on the Travelers CGL's "Real Estate

11

Property Managed" endorsement and the Benchmark policy's "Other Insurance" condition in its CGL Coverage Form, the Benchmark policy provides primary and noncontributory insurance to AJR and the Travelers policy provides excess insurance to AJR, and owes no duty to defend or indemnify AJR unless and until the Benchmark policy has been exhausted.

58.     Benchmark maintains that its policy provides only excess insurance to AJR and that the Travelers CGL provides primary and noncontributory insurance to AJR and owes the duty to defend to AJR in the *Haro* suit.

59.     An actual and justiciable controversy exists between the parties hereto concerning coverage provided to AJR by the Benchmark policy and the Travelers CGL. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court is granted the power to determine and adjudicate the rights and obligations of the parties hereto.

**WHEREFORE**, for the reasons set forth hereinabove, Travelers prays that that the Court enter a judgment in its favor, finding and declaring that the Benchmark policy provides primary and noncontributory insurance to AJR, that said policy owes AJR duties to defend and indemnify in the *Haro* suit, and that the Travelers CGL provides excess insurance to AJR, with no duty to defend or indemnify AJR in the *Haro* suit unless and until the Benchmark policy has been exhausted by the payment of settlements or judgments, provide Travelers with such other and further relief as the Court deems just and equitable, and award Travelers its costs incurred herein.

## COUNT II - EQUITABLE SUBROGATION

60.     Travelers repeats and realleges ¶¶ 1 through 58 hereof, inclusive, as and for ¶ 60 of this Count II.

61.     Because Benchmark has failed and refused to defend AJR in the *Haro* suit, Travelers, pursuant to the Travelers CGL, has done so and thereby expended sums for attorneys' fees and litigation-related expenses in the amount of approximately $25,000 to date, and continues expending sums for attorneys' fees and litigation-related expenses on behalf of AJR as of the filing hereof.

62.     Benchmark was and is primarily liable to AJR for its defense and indemnity under the Benchmark policy, because that policy provides primary and non-contributory insurance to AJR for its potential liability in the *Haro* suit.

63.     Travelers is secondarily liable to AJR for the same loss under the Travelers CGL because it provides insurance to AJR that is excess of the insurance provided by the Benchmark policy.

64.     By defending AJR in the *Haro* suit, Travelers has discharged, and continues to discharge, its liability to defend AJR, and simultaneously and commensurately extinguished the liability of Benchmark to defend AJR.

65.     Travelers is entitled to equitable subrogation against Benchmark and Benchmark is liable to Travelers for Travelers' payments on behalf of AJR in the defense of the *Haro* suit because Benchmark is primarily responsible for those payments.

**WHEREFORE**, for the reasons set forth hereinabove, Travelers prays that the Court enter judgment in its favor and against Benchmark in the amount of $25,000 on an interim basis, plus all such additional sums that Travelers has expended or will expend in the defense and/or indemnity of AJR in the *Haro* suit prior to the entry of a judgment herein, on such proofs as the Court requires, plus statutory interest pursuant to 815 ILCS 205/2, plus Travelers' costs incurred herein, and provide Travelers with such other and

further relief as the Court deems just and equitable.

## COUNT III - CONTRACTUAL SUBROGATION

66.     Travelers repeats and realleges ¶¶ 1 through 58 and ¶ 61 hereof, inclusive, as and for ¶ 66 of this Count III.

67.     By failing to defend AJR in the *Haro* suit, Benchmark breached its policy and is liable to AJR for all damages incurred as a consequence of the breach.

68.     Pursuant to Conditions 4 and 8 of the Travelers CGL, Travelers is contractually subrogated to AJR's rights against Benchmark and AJR's right to recover damages from Benchmark based on the breach of its duty to defend AJR have been transferred to Travelers.

**WHEREFORE**, for the reasons set forth hereinabove, Travelers prays that the Court enter judgment in its favor and against Benchmark in the amount of $25,000 on an interim basis, plus all such additional sums that Travelers has expended or will expend in the defense and/or indemnity of AJR in the *Haro* suit prior to the entry of judgment herein, on such proofs as the Court requires, plus statutory interest pursuant to 815 ILCS 205/2, plus Travelers' costs incurred herein, and provide Travelers with such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Travelers Property Casualty Company of
America
By:  /s/Richard T. Valentino
        One of Its Attorneys

Richard T. Valentino, Esq.
SmithAmundsen LLC
150 North Michigan Ave., Suite 3300
Chicago, IL 60601
(312) 894-3200
rvalentino@smithamundsen.com

14